UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

DEPENDABLE SALES & SERVICE, INC.,

                        Plaintiffs,                    15-cv-1742 (PKC)

          -against-                    MEMORANDUM
                                                            <u>AND ORDER</u>

TRUECAR, INC.,

                        Defendant.

------------------------------------------------------------x

CASTEL, U.S.D.J.

        The plaintiffs are 162 auto dealerships located throughout the United States. They allege that defendant TrueCar, Inc. ("TrueCar") violated the Lanham Act and New York law by falsely advertising a "no haggling" and "no negotiation" experience for car purchasers. According to plaintiffs, TrueCar requires consumers to negotiate with auto dealerships as to price and vehicle, thereby rendering its advertisements false. Plaintiffs also allege that TrueCar's advertisements misrepresent the company's pricing and financing services, as well as the availability of certain vehicle models.

        TrueCar moves to dismiss the First Amended Complaint (the "Complaint") pursuant to Rule 12(b)(6), Fed. R. Civ. P. For the reasons explained, the motion is granted in part and denied in part.

BACKGROUND

        For the purposes of this motion, all non-conclusory factual allegations are accepted as true, and all inferences are drawn in favor of the plaintiffs. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

A.  The Parties.

As noted, plaintiffs are 162 auto dealerships located throughout the country. (Compl't ¶¶ 5-166.)  They contend that they have lost sales to TrueCar-affiliated dealers, and that they have been "forced" to offer discounted prices in order to match TrueCar's allegedly misleading price guarantees.  (Compl't ¶ 293.)

TrueCar is a Delaware corporation with its principal place of business in California.  (Compl't ¶ 168.)  It operates a website that enables prospective automobile purchasers to search for available vehicles.  (Compl't ¶ 179.)  It advertises nationally and participates in interstate commerce.  (Compl't ¶ 168.)  TrueCar's website states that it has more than 9,000 affiliated auto dealerships nationwide.  (Compl't ¶ 169.)  Among other things, TrueCar's site states that more than 500,000 customers have purchased vehicles from "TrueCar Certified Dealers."  (Compl't ¶ 169.)

B.  TrueCar's Website.

At TrueCar's website, www.truecar.com, consumers can search for vehicles and prices offered by dealerships affiliated with TrueCar.  (Compl't ¶ 179.)  Search inputs include vehicle year, brand, model and color.  (Compl't ¶ 179.)  The site generates a vehicle report covering that lists pricing information for the selected vehicle but does not identify the TrueCar-affiliated dealers that sell the vehicle.  (Compl't ¶ 180.)  The dealers' identities are disclosed only after a consumer enters his or her name and contact information.  (Compl't ¶ 180.)

Once the consumer has submitted contact information and generated a vehicle report, dealerships contact the consumer to solicit business.  (Compl't ¶ 181.)  As characterized in the Complaint, "Within mere minutes of the consumer providing his or her contact information to TrueCar, the consumer may be contacted by multiple TrueCar Certified Dealers

who will begin a bidding war to win the consumer's business."  (Compl't ¶ 183.)  "As a result, instead of taking the 'haggling' out of car sales – as TrueCar advertises – TrueCar's business model facilitates and encourages haggling."  (Compl't ¶ 183.)  Plaintiffs allege that despite dealer negotiations, consumers may ultimately pay prices higher than those offered through the TrueCar website.  (Compl't ¶ 183.)

Once the vehicle report is available to the consumer, the consumer also may download a "Guaranteed Savings Certificate."  (Compl't ¶ 181.)  According to the Complaint, the "Guaranteed Savings Certificate" does not accurately reflect the eventual price paid by TrueCar customers.  (Compl't ¶¶ 183-84.)  As characterized by plaintiffs: "TrueCar is merely a referral service providing customer leads to its affiliated automobile dealerships."  (Compl't ¶ 184.)

C.  The Allegedly False and Misleading Statements in TrueCar's Advertisements.

Plaintiffs allege that TrueCar's advertisements misrepresent the company's services in six different areas.

Two categories of alleged misrepresentation go toward the purchasing process and the availability of vehicle models.  The Complaint alleges that TrueCar makes a "No-Haggle Claim," which promises a negotiation-free purchasing experience, when, by design, TrueCar requires dealer negotiation.  (Compl't ¶¶ 186-210.)  Plaintiffs separately allege that TrueCar uses a "bait-and-switch" approach to its advertising, in which consumers select a specific vehicle model before being prompted to submit personal contact information.  (Compl't ¶¶ 211-26.)  According to plaintiffs, TrueCar dealers often do not offer the vehicle models promised to consumers, and dealers instead urge customers to purchase vehicles not originally selected.  (Compl't ¶¶ 211-26.)

Plaintiffs also allege that TrueCar's advertisements mislead customers on pricing and financing matters, including misrepresentations about the prices that dealerships pay for vehicles, the assessment of hidden costs and fees, the availability of financing options and the use of rebates.  (Compl't ¶¶ 227-91.)

Plaintiffs' allegations concerning the contents of the allegedly misleading advertisements are discussed in greater detail below.

D.  <u>Plaintiffs' Claims for Relief.</u>

The Complaint brings three claims for relief.  Count One alleges false advertising under the federal Lanham Act, 15 U.S.C. § 1125(A)(1)(B).  (Compl't ¶¶ 307-17.)  Specifically, it asserts that TrueCar's advertisements are literally false, or, in the alternative, impliedly misleading as to the nature, characteristics or qualities of TrueCar's services.  (Compl't ¶¶ 309-10.)  Count Two alleges unfair competition under New York common law and N.Y. General Business Law § 360-o, "as well as the comparable unfair competition and deceptive practices common laws" of other states where TrueCar advertises.  (Compl't ¶ 323.)  Count Three alleges that TrueCar engages in deceptive acts and practices and false advertising in violation of N.Y. General Business Law §§ 349 and 350, "as well as the comparable unfair competition and deceptive acts and practices statutory laws" of other states where TrueCar advertises.  (Compl't ¶ 326.)  Plaintiffs seek damages and injunctive relief.  (Compl't ¶ 317.)

RULE 12(b)(6) STANDARD.

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  Legal conclusions are not entitled to the presumption of truth, and a court assessing the

sufficiency of a complaint disregards them.  Id.  Instead, the Court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"  Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86 (2d Cir. 2000)).

        "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits.'"  Halebian v. Berv, 644 F.3d 122, 130 (2d Cir. 2011) (quoting Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006)).  A court reviewing a Rule 12(b)(6) motion "does not ordinarily look beyond the complaint and attached documents in deciding a motion to dismiss brought under the rule."  Id.  A court may, however, "consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference . . . and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'"  Stratte-McClure v. Morgan Stanley, 776 F.3d 94, 100 (2d Cir. 2015) (quoting Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)).

DISCUSSION.

        I.      The Lanham Act's Prohibition against False Advertising.

        Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), prohibits any person "in commercial advertising or promotion, [from] misrepresent[ing] the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial

activities . . . ."  To state a false advertising claim under section 43(a), the plaintiff must plausibly allege "that the statement in the challenged advertisement is false."  Merck Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 255 (2d Cir. 2014).

        Falseness may be established through one of two theories: "'that the challenged advertisement is literally false, i.e., false on its face,' or 'that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers.'"  Tiffany (NJ) Inc. v. eBay Inc., 600 F.3d 93, 112 (2d Cir. 2010) (quoting Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 153 (2d Cir. 2007)).  "In either case, the injuries redressed in false advertising cases are the result of public deception."  Id. (quotation marks omitted).  In addition to falsity, a plaintiff must plausibly allege that the defendant "misrepresented an inherent quality or characteristic of the product," that the false statement was made in interstate commerce, and that the plaintiff was injured.  Merck, 760 F.3d at 255 (quotation marks omitted).

        The parties agree that plaintiffs' claims brought pursuant to New York General Business Law section 349 and New York's common law of unfair competition are analyzed using the same standard as the Lanham Act claim.  (Def. Mem. 24; Pl. Mem. 7.)  See also Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH, 2015 WL 4002468, at *17 n.14 (S.D.N.Y. July 1, 2015) (Nathan, J.) (applying same standards for false advertising claims under the Lanham Act and New York law); Samsung Display Co. v. Acacia Research Corp., 2014 WL 6791603, at *5 (S.D.N.Y. Dec. 3, 2014) (Oetken, J.) (for false advertising claims, "[t]he analysis applied under § 43(a) of the Lanham Act, New York common law, and § 349 of the General Business Law is 'substantially the same.'").

II.    TrueCar's Motion Directed to the Falsity of the Advertisements Is Granted in Part
and Denied in Part.

A.    The Motion to Dismiss the "No-Haggle" Claim Is Denied.

1.    TrueCar's Allegedly False Advertising Concerning "Haggling" and
Negotiation.

TrueCar argues that the Complaint fails to state a false advertising claim as to

advertisements promising consumers a haggle-free, negotiation-free buying experience.  As will

be discussed, this aspect of defendants' motion is substantially premised upon defendants'

disagreement with the facts alleged.  Because the Court must accept all non-conclusory factual

allegations as true, this portion of the motion is denied.

The Complaint asserts that TrueCar falsely advertises that its customers will enjoy

a haggle-free, negotiation-free purchasing experience.  (Compl't ¶¶ 186-210.)  Plaintiffs allege

that TrueCar makes these misrepresentations in television, radio and social media ads.  (Compl't

¶¶ 186-210.)  The Complaint recites numerous iterations of TrueCar's advertisements concerning

negotiation-free transactions, including statements like, "There's zero negotiation . . . .," "You

get a negotiation free guaranteed savings and hassle free buying experience," "Because I used

TrueCar there was no haggling about the price," and "Enjoy guaranteed savings & a negotiation-

free car buying experience . . . ."  (Compl't ¶ 188.)  According to plaintiffs, these statements are

false because TrueCar facilitates dealership solicitations to consumers, the purpose of which is to

"haggle" and negotiate over the vehicle purchase.  (Compl't ¶ 189.)

Plaintiffs allege that by entering personal information and printing a Guaranteed

Savings Certificate, consumers are taking the first step in a process that leads to dealerships

contacting them directly to solicit their business and negotiate a transaction.  (Compl't ¶ 189.)

Plaintiffs acknowledge that certain TrueCar advertisements contain disclaimers, but assert that they are inconspicuous and appear in fine print.  (Compl't ¶¶ 202-10.)

> ### 2.   Whether TrueCar in Fact Guarantees Customer Savings Cannot Be Resolved on a Motion to Dismiss.

TrueCar challenges the facts set forth in the Complaint.  It argues that, in truth, "TrueCar's user experience does not involve negotiation," and that "the customer is immediately entitled to the Guaranteed Savings with the click of a mouse."  (Def. Mem. 14.)  It further argues that the Guaranteed Savings Certificate provides "a lump-sum discount."  (Def. Mem. 14.)

At the motion to dismiss stage, the Court cannot decide whether TrueCar's "Guaranteed Savings Certificate" actually guarantees customer savings or does not involve negotiation.  TrueCar has raised "a factual dispute that is inappropriate for resolution on a motion to dismiss."  Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 405 (2d Cir. 2015).  To the extent that TrueCar's motion is premised on the factual assertion that consumers are, in fact, entitled to guaranteed savings and not required to negotiate, its motion is denied.

> ### 3.   The Effect of TrueCar's Disclaimer Cannot Be Decided at this Stage.

TrueCar also argues that its website contains a disclaimer that states in relevant part, "Guaranteed Savings represents the amount that a TrueCar Certified Dealer selected by you guarantees that you will save off the Manufacturers' Suggested Retail Price ('MSRP') on any in-stock vehicle that is the same make, model, and trim as your Ideal Vehicle.  The Guaranteed Savings is based on a vehicle without factory or dealer installed options and includes generally available manufacturer incentives. . . .  Each dealer sets its own pricing.  Your actual purchase price is negotiated between you and the dealer."  (Weinberger Dec. Ex. A.)  According to TrueCar, "[t]he presence of this disclosure alone belies the 'no-haggle' claim."  (Def. Mem. at 15.)

- 8 -

The Second Circuit has observed that "under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception."  Fink v. Time Warner Cable, 714 F.3d 739, 742 (2d Cir. 2013) (per curiam); see also Tambrands, Inc. v. Warner-Lambert Co., 673 F. Supp. 1190, 1195 (S.D.N.Y. 1987) (noting in findings of fact that "a disclaimer, modification or qualifier is appropriate only if it effectively turns an otherwise false advertising claim into a true one, in such a manner that the consumers are not misled.") (Cedarbaum, J.).  A disclaimer is considered in the overall context of the advertisement.  See, e.g., Fink, 714 F.3d at 742 ("in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."); McNeil-PPC, Inc. v. Pfizer Inc., 351 F. Supp. 2d 226, 254 (S.D.N.Y. 2005) (concluding in a motion for preliminary injunction that "[t]he few words of disclaimer are lost when the ads are considered as a whole.") (Chin, J.).

While a disclaimer may be so plain, clear and conspicuous as to bar a claim as a matter of law, this is not such a case.  TrueCar asserts that consumers must log onto TrueCar's website or app in order to use TrueCar, and that the disclaimer is posted "on the Website . . . ." (Def. Mem. 14-15.)  At this stage, the Court cannot conclude whether the disclaimer "effectively turns an otherwise false advertising claim into a true one, in such a manner that the consumers are not misled," Tambrands, Inc., 673 F. Supp. at 1195, or whether "[t]he few words of disclaimer are lost when the ads are considered as a whole," McNeil-PPC, Inc., 351 F. Supp. 2d at 254.

TrueCar's motion to dismiss the "No-Haggle Claim" on the basis of the disclaimer is therefore denied.

4.   TrueCar's Motion to Dismiss on Puffery Grounds Is Denied.

TrueCar argues that the statements cited in support of the "No-Haggle Claim" are non-actionable puffery.  Because the Court cannot determine at the Rule 12(b)(6) stage whether the disputed statements amount to puffery, TrueCar's motion is denied.

A defendant cannot be liable for advertisements that amount to puffery.  Time Warner Cable, 497 F.3d at 159.  Statements of puffery are subjective claims about products that "cannot be proven either true or false."  Id. (quotation marks omitted).  The Second Circuit explained:

> Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language.  Such sales talk, or puffing, as it is commonly called, is considered to be offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer.  The 'puffing' rule amounts to a seller's privilege to lie his head off, so long as he says nothing specific.

Id. (quotation marks omitted).  Puffery may occur in the form of "a general claim of superiority over comparable products," or, alternatively, as "an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying."  Id. at 160 (quotation marks omitted).  For example, the Second Circuit concluded that a satellite TV company engaged in puffery when it favorably compared its broadcast resolution quality to an "unwatchably blurry, distorted, and pixelated" television image imputed to a cable TV competitor.  Id.  The Second Circuit also has concluded that statements touting a product's "thorough[ ]" research into the English language and the origins of terms related animals were subjective, and could not be proved true or false.  Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995).

TrueCar argues that "to haggle" is a pejorative concept, which is opinion-based and turns solely on "consumers' subjective feelings and beliefs."  (Def. Mem. 10-11.)  However,

the parties offer contrasting dictionary definitions of "haggle," which the Court is unable to resolve based on the pleadings.  TrueCar cites one definition of haggle as to "bargain in a petty, quibbling, and naggingly quarrelsome manner."  (Def. Mem. 10, citing Random House Dictionary of the Eng. Language 636 (unabr. ed. 1981).)  Plaintiffs cite a different definition of haggle as "to talk or argue with someone especially in order to agree on a price."  (Pl. Mem. 13, citing Merriam-Webster Online.[1])  The Court cannot resolve these competing definitions on a Rule 12(b)(6) motion, which scrutinizes only the Complaint and the documents integral thereto. The Complaint can be read to plausibly allege that the phrase "no haggled" is understood by lay consumers to mean that the given price is the actual price, and that no negotiation is required.

Additionally, TrueCar's puffery argument does not address other supporting allegations concerning the allegedly false statements made in TrueCar's advertisements.  The "No-Haggle Claim" recites numerous statements advertised by TrueCar, including: "No Negotiation," "No Surprises," "No hidden costs or surprise fees.  Ever.," "the negotiation-free car buying and selling mobile marketplace," "we provide true up front pricing information and a network of trusted dealers that guarantee savings without negotiation," "There's zero negotiation"; "You don't have to negotiate a thing . . . .," "it's negotiation free guaranteed savings and a hassle free buying experience," and "the negotiation-free car-buying platform." (Compl't ¶¶ 186-88.)  Although the Complaint uses the word "haggle" to describe the process of purchasing through TrueCar, and certain advertisements reference a no-haggle experience, several of the underlying statements in the Complaint go to whether TrueCar purchases are, in fact, "negotiation-free" and whether TrueCar actually "guarantee[s] savings without

---

[1] http://www.merriam-webster.com/dictionary/haggle

negotiation." (Compl't ¶¶ 187-88.) TrueCar does not explain how these statements concerning negotiation are mere puffery.

TrueCar's motion to dismiss the "No-Haggle Claim" on grounds of puffery is denied.

B.  The Motion to Dismiss the "Bait-and-Switch" Claim Is Granted.

The Complaint asserts that TrueCar lures in customers by using a "bait-and-switch" approach in its advertisements.  Plaintiffs allege that TrueCar's advertising misleads consumers into believing that they can select a specific vehicle at a guaranteed price.  (Compl't ¶ 211.)  However, not all TrueCar-affiliated dealers who contact consumers have the desired make and model in their inventory, and will instead offer consumers different vehicles.  (Compl't ¶ 211.)  Plaintiffs contend that TrueCar dealerships do not provide either the specific vehicles or prices purportedly guaranteed by their advertisements, and that numerous consumers have reported being misled by TrueCar's so-called "bait and switch." (Compl't ¶¶ 212-15.)

The Complaint does not identify statements by TrueCar that support the "bait-and-switch" claim.  To plausibly allege a claim for false advertising, the plaintiff must allege "that the false or misleading representation involved an inherent or material quality of the product."  Time Warner Cable, 497 F.3d at 153 n.3.  As noted, a claim of false advertising may be based on the theory "that the challenged advertisement is literally false, i.e., false on its face," or "that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers."  Id.

Here, because the Complaint does not identify the allegedly false advertisements that support a "bait-and-switch" claim, it fails to plausibly allege a false advertising claim.  The Complaint does not place TrueCar on notice of any allegedly misleading representation

- 12 -

concerning its product, and identifies no statement or image that is claimed to be either literally or impliedly false.

Because the "bait-and-switch" allegations do not plausibly allege a false advertising claim, TrueCar's motion is granted as to this portion of the Complaint.

      C.   <u>The Motion to Dismiss the "Factory Invoice" Claim Is Denied.</u>

According to the Complaint, TrueCar's advertising misleads consumers into believing that they can learn a vehicle's "factory invoice" price through TrueCar, and that they will receive "an exceptional offer" from TrueCar because they can purchase a vehicle for less than the amount originally paid by the dealer.  (Compl't ¶¶ 227-28.)  "For example, TrueCar's advertising includes pricing claims relating to a 'factory invoice' price for new automobiles."  (Compl't ¶ 227.)  According to the plaintiffs, the advertising is misleading because the advertised "factory invoice" price does not reflect rebates, incentives and other discounts that the manufacturer provides to the dealer.  (Compl't ¶¶ 228.)

As support for the allegation, the Complaint cites to its Exhibit A, which appears to be a screenshot of TrueCar's online advertising.  The fourth page of Exhibit A contains a graph that identifies a "TrueCar Price" of $24,450, an "Average Paid" figure of $25,386, a "Factory Invoice" price of $25,970 and a Manufacturers' Suggested Retail Price of $26,445.  (Compl't Ex. A.)  The accompanying text, titled "Information is Power," states, "As a data company, we study millions of purchase transactions every year. . . .  Within minutes, you can get upfront pricing information from TrueCar Certified Dealers and know how those prices compare to the current market."  (Compl't Ex. A.)  Plaintiffs describe the references to "factory invoice" price in advertisements as intentionally deceptive.  (Compl't ¶¶ 229-33.)

In moving to dismiss this claim, TrueCar again raises a series of factual challenges to the Complaint's allegations.  First, it argues that any reasonable consumer would believe that dealerships profit from their auto sales.  But plaintiffs do not claim that TrueCar somehow failed to disclose that dealers profited from sales – they allege that the "factory invoice" price cited in advertisements is misleadingly high.[2]  Second, TrueCar cites a TrueCar web page describing factory invoices for the Toyota Corolla, which states that the factory invoice "does not include discounts, dealer incentives, or holdbacks . . . ."  (Def. Mem. 18.)  At the Rule 12(b)(6) stage, the Court cannot determine whether the "factory invoice" definition contained on TrueCar's web page discussing Toyota Corollas cured any allegedly misleading advertisement citing a factory invoice price.  See, e.g., Tambrands, 673 F. Supp. at 1195.  Third, TrueCar argues that the graphic at Exhibit A is not misleading "because TrueCar users on occasion will pay less than the factory invoice price."  (Def. Mem. 19.)  But the Court cannot adjudicate on a motion to dismiss whether "users on occasion" pay less than the "factory invoice" price.  Halebian, 644 F.3d at 130 (courts do not resolve the "substantive merits" on a motion to dismiss).

TrueCar's motion to dismiss the "factory invoice" claim is therefore denied.

D.   The Motion to Dismiss the "Financing Claim" Is Granted.

Plaintiffs allege that TrueCar's advertisements falsely lead consumers to believe that TrueCar will calculate the financing terms of a vehicle purchase, including monthly payments.  (Compl't ¶ 243.)  They cite to a TV advertisement stating that TrueCar's price

---

[2] TrueCar relies on Chiste v. Hotels.com L.P., 756 F. Supp. 2d 382, 404 (S.D.N.Y. 2010), in which Judge McMahon dismissed a false advertising claim alleging that the defendant "fail[ed] to disclose that it was making a profit on each reservation."  Judge McMahon observed that "[t]he argument attributes to consumers a level of stupidity that the Court cannot countenance . . . ."  Id.  Here, the Complaint does not allege that TrueCar or its dealerships failed to disclose that they were profit-making enterprises, but rather, that the quoted factory invoice figure misleads consumers about the extent of their purported savings.

estimate "tells you what you can expect to pay for the car you want." (Compl't ¶ 246.)
TrueCar's website contains a feature that calculates an "Estimated Loan Payment" for the
particular vehicle selected by the consumer, which, plaintiffs allege, displays financing terms
that "are not available to all consumers." (Compl't ¶ 243.) Rather, consumers must apply
separately to financing companies, who calculate terms that vary based on the consumer's credit
rating and other factors. (Compl't ¶ 243.) Plaintiffs contend that TrueCar's claim to provide an
"estimated loan payment" is therefore false and misleading, because consumers are not
guaranteed the estimated monthly rates. (Compl't ¶ 244-45.)

   The Complaint does not plausibly allege a false advertising claim as to the
"Financing Claim." It alleges that TrueCar's website provides a calculation that is denoted as an
"Estimated Loan Payment." (Compl't ¶ 243.) In expressly stating that the loan payment is
"[e]stimated," the website is not purporting to offer actual financing terms to consumers. Like
the website, the TrueCar ad stating that the company provides a "price estimate which tells you
what you can expect to pay for the car you want" does not purport to offer financing terms to
consumers, and instead describes the financing information as an "estimate" that tells consumers
what they "can expect to pay . . . ." (Compl't ¶ 246.) Therefore, accepting as true the
Complaint's factual, non-conclusory allegations, it does not identify any literally or impliedly
false advertisements about the availability of consumer financing.

   Plaintiffs' "Financing Claim" is therefore dismissed.

   E. <u>TrueCar's Motion to Dismiss the "Transparency Claim" Is Granted.</u>

   According to the Complaint, TrueCar's advertisements tout the company's
transparency with statements like, "you can trust that everything is upfront and out in the open.
No hidden costs or surprise fees." (Compl't ¶ 259.) Plaintiffs allege that in reality, TrueCar

- 15 -

conceals costs and fees, because dealerships affiliated with TrueCar pay the company $299 for every new vehicle and $399 for every used vehicle sold through a TrueCar referral.  (Compl't ¶ 259.)  The Complaint alleges that "these fees are inevitably passed along to the consumer," and amount to an undisclosed portion of the purchase price.  (Compl't ¶ 259.)

The Complaint does not plausibly allege that TrueCar's statements concerning "hidden costs or surprise fees" amount to false advertising.  The Complaint expressly alleges that fees are charged to dealerships, not consumers.  (Compl't ¶ 259.)  With no citation to supporting facts, the plaintiffs allege that "these fees are inevitably passed along to the consumer." (Compl't ¶ 259.)  But a fee included in an overall price quoted to a consumer is in no sense a hidden fee or surprise cost or fee.  Plaintiffs' false advertising claim premised on hidden costs and fees is implausible.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  Plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible."  Id. at 570.  Because the "Transparency Claim" does not identify "hidden costs or surprise fees" that are charged to consumers, the Complaint fails to plausibly allege a false advertising claim.

F.   TrueCar's Motion to Dismiss the "Rebate Claim" Is Granted.

TrueCar advertises "guaranteed savings" based on customer discounts.  (Compl't ¶ 276.)  According to the Complaint, consumers "are led to believe that by using TrueCar's services, they will receive an accurate price quote for a specific vehicle requested by the consumer.  For example, TrueCar advertises 'Guaranteed Savings' that include discounts based on factory incentives and rebates . . . ."  (Compl't ¶ 276.)

- 16 -

According to plaintiffs, TrueCar's advertisements are false because they imply that consumers will receive the full discount advertised by TrueCar.  (Compl't ¶ 277.)  In reality, plaintiffs allege, certain rebates are only available to certain customers, such as loyalty rebates or rebates offered to recent college graduates or members of the military.  (Compl't ¶ 277.)  The Complaint alleges that certain TrueCar customers have expressed confusion after receiving the impression that they would be eligible for all rebates advertised by TrueCar.  (Compl't ¶¶ 278-70.)

The Complaint does not identify advertisements that support the "rebate claim." Because it does not identify the allegedly false statements supporting the "rebate claim," it fails to plausibly allege a false advertising claim, and does not place TrueCar on notice of the statements that it contends were literally or impliedly false.  See generally Time Warner Cable, 497 F.3d at 153.  Defendants' motion to dismiss the "Rebate Claim" is therefore granted.

III.    TrueCar's Motion to Dismiss for Failure to Allege Injury Is Denied.

Lastly, TrueCar separately argues that plaintiffs do not plausibly allege an injury because, to the extent that consumers may have been misled by advertising, "any such deception is necessarily dissipated before the point of purchase."  (Def. Mem. 23.)  According to TrueCar, any claimed consumer misperception about TrueCar's offerings "would be cleared up" when the consumer was offered a vehicle by an affiliated dealership, because if a "hypothetical consumer test-drove the near-match and decided to buy it," any deception caused by advertisements would have "long since dissipated."  (Def. Mem. 23.)  This argument invites the Court to resolve the substantive merits of the Complaint, which are not properly reached on a Rule 12(b)(6) motion. Halebian, 644 F.3d at 130.  The motion to dismiss for failing to plausibly allege injury is therefore denied.

CONCLUSION

   TrueCar's motion to dismiss is GRANTED as to the "bait-and-switch," "financing," "transparency" and "rebate" advertisements.  It is DENIED as to the "no haggle" and "factory invoice" advertisements.  The Clerk is directed to terminate the motion.  (Docket # 29.)

   SO ORDERED.

              _____

                P. Kevin Castel
             United States District Judge

Dated: New York, New York
   January 6, 2016