**Kramer Levin**

Harold P. Weinberger
Partner
T 212.715.9132
F 212.715.8132
hweinberger@KRAMERLEVIN.com

1177 Avenue of the Americas
New York, NY 10036
T 212.715.9100
F 212.715.8000

November 22, 2017

<u>Via ECF</u>

The Honorable P. Kevin Castel
United States District Judge
United States Courthouse
500 Pearl Street
New York, New York 10007-1312

Re:  <u>*Dependable Sales & Serv., Inc. v. TrueCar, Inc.*
15 Civ. 1742 (PKC)</u>

Dear Judge Castel:

We represent defendant TrueCar, Inc. ("TrueCar") in the above-captioned litigation. In accordance with Paragraph 4(A) of Your Honor's Individual Practices, we respectfully submit this pre-motion letter in connection with TrueCar's contemplated motions: (i) to exclude the report of Plaintiffs' economic expert, Patrick Anderson (the "Anderson Report") under *Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 579 (1993); and (ii) for summary judgment under Fed. R. Civ. P. 56. The next conference before the Court is scheduled for December 7, 2017 at 11:00 AM.

Plaintiffs cannot meet their burden to demonstrate the required elements of injury and causation, and their damages calculations amount to mere speculation. The Anderson Report simply assumes injury and causation, flatly ignoring causal factors entirely unrelated to the alleged false advertising as to which there is substantial evidence. Mr. Anderson calculates damages by assuming every sale made by a TrueCar-affiliated dealer to a consumer who searched for that same-make car using a Plaintiff's zip code is a lost sale to that Plaintiff. He then multiplies those purported lost sales over a seven-year period, utilizing a uniform profit margin of $1,602 per car irrespective of the automobile make, or where in the United States such sales were made.

Given the myriad baseless and unsupported assumptions on which the Anderson Report is based, we respectfully submit that Mr. Anderson's report and testimony are unreliable as a matter of law, and thus should be excluded under *Daubert*. And because Plaintiffs cannot establish causation, injury or damages — with or without the Anderson Report — summary judgment should be granted for TrueCar on all of Plaintiffs' claims.

The Honorable P. Kevin Castel
November 22, 2017

## Background

This is a false advertising case brought under Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a), and parallel state statutes. Plaintiffs are 108 automobile dealers.[1]

Defendant TrueCar provides local pricing information about new car sales, and also acts as an online communications platform that allows potential customers to connect with local dealers affiliated with TrueCar. The First Amended Complaint ("FAC") challenges as false or misleading certain of TrueCar's advertising (together, the "Challenged Claims"), specifically:

- "The No Haggle Claim": Plaintiffs allege that TrueCar falsely advertises "that its customers can utilize TrueCar's services to purchase an automobile without haggling." (FAC ¶ 186). Plaintiffs also dispute that TrueCar-affiliated dealers "guarantee savings without negotiation" and challenge the statements that TrueCar's business model involves "[n]o [s]urprises," and a "stress-free" and "haggle-free" experience. (*Id.* ¶¶ 186, 188); and

- "The Factory Invoice Claim": Plaintiffs allege that the advertising relating to a "factory invoice" price for new automobiles and a graphic on TrueCar's website showing a "TrueCar Price" that is lower than the "factory invoice" price imply that the dealer paid the "factory invoice" price to purchase the vehicle from the manufacturer and mislead consumers into thinking that TrueCar allows them to pay "less than the dealer paid." (*Id.* ¶¶ 228–29).

On January 6, 2016, the Court granted in part TrueCar's motion to dismiss the FAC, rejecting four other advertising claims that were alleged to be false. (ECF No. 36).

## Plaintiffs Cannot Demonstrate Injury and Causation

"To establish false advertising under Section 43(a) of the Lanham Act," a plaintiff must demonstrate that it "has been injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255 (2d Cir. 2014) (citation omitted). Here, Plaintiffs claim both types of injury. (FAC ¶ 293). Further, Plaintiffs bear the burden of proving they have been injured *because of* the Challenged Claims — as opposed to any other causal factor, including the four advertising claims that already were dismissed by the Court. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395 (2014) ("evidence of injury proximately caused by the defendant's alleged misrepresentations" is requirement of Lanham Act false advertising *prima facie* case). That is, Plaintiffs must offer evidence that consumers would have purchased cars from them — and not from TrueCar-affiliated dealers — had TrueCar not made the two Challenged Claims that remain in the case. *See Infinity Headwear & Apparel, LLC v.*

---

[1] The First Amended Complaint names 162 Plaintiffs (ECF No. 23). Of these, 31 were dropped from the litigation pursuant to stipulation on September 6, 2016 (ECF No. 43), and an additional 23 were dropped by stipulation on October 23, 2017 (ECF No. 71).

The Honorable P. Kevin Castel
November 22, 2017

*Jay Franco & Sons Inc.*, No. 15-CV-1259 (JPO), 2017 WL 3309724, at *6 (S.D.N.Y. Aug. 2, 2017) (at summary judgment, plaintiff must "offer evidence 'to support the causal proposition, which is anything but obvious, that buyers . . . would have bought [Plaintiff's products] (as opposed to either [Defendant's] or someone else's) had [Defendant] not" made the challenged claim (citation omitted)); *see also Apotex, Inc. v. Acorda Therapeudics, Inc.*, 823 F.3d 51, 68 (2d Cir. 2016) (affirming summary judgment for defendant on Lanham Act claim and holding that generalized evidence that defendant's increased pharmaceutical sales "stemmed from its advertisement efforts" "fail[ed] to make the necessary showing that *the specific misrepresentation*" at issue "was likely to influence consumers' purchasing decisions" (emphasis added)).

Plaintiffs cannot carry their burden.  Not one of the Plaintiffs-dealers could identify even a single sale lost to a TrueCar dealer, much less one caused by the Challenged Claims.  At most, many testified that their experience in the car business made them confident that consumers would respond to TrueCar's advertising.  Such "speculative testimony," which reflects nothing more than a witness's "personal belief in the potential market benefits" of the advertising, is "insufficient to establish the causal nexus between false marketing and competitive injury" to survive a summary judgment motion.  *See, e.g.*, *Infinity Headwear*, 2017 WL 3309724, at *6.[2]

---

[2] In addition to Plaintiffs' failure to prove injury and causation, we believe summary judgment should be granted for TrueCar on the No Haggle Claim because Plaintiffs cannot demonstrate it is material, meaning "likely to influence purchasing decisions." *Apotex*, 823 F.3d at 68 (citation omitted).  The Second Circuit routinely upholds summary judgment for defendants based on a finding that a deceptive misrepresentation is not material.  *See, e.g., id.* at 67 (showing of materiality is required even where an "advertisement is literally false" and "consumer deception is presumed"); *Reed Constr. Data v. McGraw-Hill Cos.*, 638 F. App'x 43, 45 (2d Cir. 2016) (summary order) (affirming summary judgment for defendant where "district court found that none of the statements, individually or in the aggregate, was material" and "[d]iscovery revealed only one customer who arguably relied upon [defendant's] advertising . . .").  Here, to the extent a consumer visited a TrueCar dealer because of the No Haggle Claim, but did not make any purchase, by definition materiality is not satisfied.  Conversely, if a consumer believed (contrary to disclaiming language on TrueCar's website and common sense) that she could engage in no negotiation whatsoever at a TrueCar dealer, visited the dealer on that basis, engaged in negotiation anyway and nevertheless bought a car, the No Haggle Claim can hardly be said to be material.  Further, while the Court could not "determine at the Rule 12(b)(6) stage whether the disputed statements [in the No Haggle Claim] amount to puffery" (ECF No. 36, at 10), discovery has made plain that "no haggle" and "negotiation-free" claims are routinely used by many Plaintiffs and are common "sales talk" or "puffing" that are "considered to be offered and understood as an expression of the seller's opinion only, which is to be discounted by the buyer" and are nonactionable

The Honorable P. Kevin Castel
November 22, 2017

Absent such proof, Plaintiffs put complete reliance on the Anderson Report, which purports to show that the Challenged Claims caused each of Plaintiffs' alleged lost sales and then to quantify the supposed resultant damages.  So long as a consumer searched for a car on www.truecar.com in a ZIP code within a 30-minute drive of a Plaintiff-dealer, the Anderson Report treats a sale of a same-make car to that consumer by any TrueCar dealer in the United States as a sale caused by the advertising at issue and as a sale lost to that Plaintiff.  Using what he calls a "1:1 ratio," Mr. Anderson then multiplies the resulting 48,184 supposed lost sales by a national average profit of $1,602 per car, which is demonstrably greater than many of the Plaintiffs' actual per-hood profits.  The Anderson Report does not satisfy admissibility requirements of Federal Rule of Evidence 702 and *Daubert* and therefore should be excluded.

Among its many flaws, the Anderson Report is premised on at least two fatal assumptions that render its conclusions unreliable as a matter of law.[3]  First, Mr. Anderson simply assumes that every same-make automobile sale made by a TrueCar-affiliated dealer to a consumer who searched for a car using a Plaintiff's zip code is attributable to the Challenged Claims.  Second, Mr. Anderson assumes that but for the Challenged Claims, Plaintiffs — as opposed to other non-TrueCar affiliated dealers — would have made every challenged sale made by a TrueCar-affiliated dealer.  These two assumptions are not borne out by economic analysis nor any other evidence.

---

under the Lanham Act.  *Time Warner Cable, Inc. v. DIRECTTV, Inc.*, 497 F.3d 144, 159 (2d Cir. 2007) (citation omitted).

[3]   The Anderson Report contains enough additional obvious errors as to belie even the pretense of reliability.  Among other things, the Anderson Report:

- calculates damages arising from the No Haggle Claim before its introduction and after TrueCar changed its marketing strategy and discontinued the claim;

- calculates damages for certain Plaintiffs while they themselves were TrueCar dealers, and thus supposedly benefitting from the Challenged Claims;

- ignores financial statements and other direct evidence of the individual Plaintiffs-dealers' profitability in favor of a national "average" damages figure that is irreconcilable with many Plaintiffs' actual profit margins; and

- allocates 100% of the same sale to multiple Plaintiffs-dealers whenever more than one dealer was within a 30-minute drive of a searched zip code.

The Honorable P. Kevin Castel
November 22, 2017

Mr. Anderson's own testimony undermines the first assumption, as he testified that it would be "impossible" to "disentangle[]" the two Challenged Claims (let alone to separate out the effects of the four dismissed advertising claims) and admitted he "certainly wouldn't be able to come up with some type of additive separation." By itself, Mr. Anderson's failure to "disentangle[]" the No Haggle Claim from other TrueCar advertising claims is a fatal relevance flaw, as courts in this Circuit routinely grant summary judgment for defendants in Lanham Act cases like this one, where the plaintiff "fails to make the necessary showing that *the specific misrepresentation*" at issue drove "consumers' purchasing decisions . . . ." *Apotex*, 823 F.3d at 68 (emphasis added).[4]

Rather than conduct "any analysis as to whether the four claims that the Court dismissed were causing any injury to the [P]laintiffs," Mr. Anderson admits he fell back on his "professional judgment" and supposed "knowledge of the industry" when he concluded that the No Haggle Claim caused all 48,184 of Plaintiffs' alleged lost sales. That will not do. *See, e.g.*, *Fishman Transducers, Inc. v. Paul*, 684 F.3d 187, 195 (1st Cir. 2012) (excluding expert who failed to undertake "difficult, time-consuming and expensive efforts" to obtain "direct testimony from customers, [or] market research surveys of [product] purchasers as to their reasons for purchases," noting that, without them, "[expert's] report was merely a basis for jury speculation"); *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242 (SAS), 2002 WL 1585551, at *2–4 (S.D.N.Y. July 16, 2002) (excluding plaintiff's damages expert testimony because it lacked evidentiary support, noting that experts "must provide some explanation for their conclusions, rather than referring generally to their experience"). Indeed, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *see also R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 273–77 (S.D.N.Y. 2010) (affirming exclusion of plaintiff's causation and damages expert testimony in trademark infringement litigation after finding expert's conclusions lacked record justification and were based on "little more than

---

[4] While the defects described in this letter apply equally to both Challenged Claims, Plaintiffs' failure even to attempt to put forward evidence of a genuine dispute that the Factory Invoice claim caused their alleged injuries provides additional justification for summary adjudication. As to causation and injury, Mr. Anderson admitted that he provided no "quantitative analysis of the factory invoice claim" whatsoever, and stated that "if the words 'factory invoice' were not part of the [challenged advertising], it wouldn't affect [his] damages estimate." And while Plaintiffs argued to the court in their August 18, 2017 pre-motion letter (ECF No. 63) that "a genuine issue of material fact as to consumer perception of the phrase 'factory invoice'" precluded summary judgment on that claim, Plaintiffs have failed to adduce any survey or other evidence of the falsity of this claim. Further, we believe summary judgment should be granted on the Factory Invoice Claim for the additional independent reason that discovery has shown "factory invoice" is a phrase likewise used by Plaintiffs in their own advertising, is a defined industry term, and in any event is explained (in accordance with that industry definition) on TrueCar's website.

The Honorable P. Kevin Castel
November 22, 2017

speculation"). And "as a matter of law," a Lanham Act plaintiff cannot make a showing of causation sufficient to withstand summary judgment by "sweeping statement[s]" in a declaration that "damages have [been] incurred . . . ." *Sun Trading Distrib. Co. v. Evidence Music, Inc.*, 980 F. Supp. 722, 729–30 (S.D.N.Y. 1997).

Even worse, Mr. Anderson's report appears to equate TrueCar's advertising of the No Haggle Claim with TrueCar's *business model*. TrueCar cites "guaranteed savings off the manufacturer's suggested retail price" in its annual 10-K filing as a key benefit it offers consumers, as Mr. Anderson notes. Since TrueCar's "services" benefit consumers, who are "attracted by [TrueCar's] advertising" — and since TrueCar "only gets paid by a dealer when a consumer actually buys a car, after searching" on "TrueCar's service" — Mr. Anderson concludes that each of Plaintiffs' alleged lost sales was caused by the No Haggle Claim. But this case does not involve TrueCar's "advertising" generally, and certainly does not involve its business model; only the two Challenged Claims are at issue. Indeed, Mr. Anderson's conclusions are belied by the same 10-K on which he relies. Just above "guaranteed savings certificates," the document states that a "key element" of the TrueCar consumer experience is access to TrueCar's "[m]arket pricing data," which provides consumers with "an understanding of what others have paid for similarly configured vehicles," and "enables the consumer to evaluate a potential price in the context of broader market data." Mr. Anderson ignores this aspect of TrueCar's "services" entirely.

Mr. Anderson's failure to demonstrate a causal link between the Challenged Claims and Plaintiffs' alleged injuries renders his report unreliable. *See, e.g.*, *Verisign, Inc. v. XYZ.com LLC*, 848 F.3d 292, 300–01 (4th Cir. 2017) (upholding exclusion of expert testimony under *Daubert* and entry of summary judgment for defendant where expert's analysis "assume[d] rather than demonstrate[d]" that every lost sale was the result of the challenged statements); *A.L.S. Enters., Inc. v. Robinson Outdoor Prods., LLC*, No. 14 CV 500, 2017 WL 393307, at *7 (W.D. Mich. Jan. 30, 2017) (reversing judgment for plaintiff that "presented no evidence tying [challenged] purchases to a particular ad claim"); *Snac Lite, LLC v. Nuts 'N More, LLC*, No. 14 CV 1695 (RDP), 2016 WL 6778268, at *7 (N.D. Ala. Nov. 16, 2016) (excluding under *Daubert* expert testimony that failed to demonstrate "that consumers' [purchasing] choices were connected to Defendant's false advertising" and granting summary judgment for defendant).

Nor is there any basis for Mr. Anderson's assumption that but for the Challenged Claims, each and every same-make sale to a consumer sharing a zip code with a Plaintiff would have gone to that Plaintiff-dealer. That is especially so given that in many cases, other non-Plaintiff dealers selling the same make of car also exist within the area circumscribed by the same 30-minute drive time. Such empty speculation fails to establish causation as a matter of law. *See Infinity Headwear*, 2017 WL 3309724, at *6 (at summary judgment, plaintiff must "offer evidence 'to support the causal proposition, which is anything but obvious, that buyers . . . would have bought [Plaintiff's products] (as opposed to either [Defendant's] or someone else's) had [Defendant] not" made the challenged claim (citation omitted)); *Compania Embotelladora Del Pacifico, S.A. v. Pepsi Cola Co.*, 650 F. Supp. 2d 314, 319 (S.D.N.Y. 2009) (excluding under *Daubert* unsubstantiated expert testimony that "in a 'but for' world," plaintiff "would have made

The Honorable P. Kevin Castel
November 22, 2017

each and every one of [the] sales that were made by bottlers or distributors other than [plaintiff]"). Taken together, the core assumptions of the Anderson Report render it irrelevant and unreliable as a matter of law. *See Lava Trading, Inc. v. Hartford Fire Ins. Co.*, 03 Civ. 7037 (PKC), 2005 WL 4684238, at *21 (S.D.N.Y. Apr. 11, 2005) (Castel, J.) (adopting R&R) (excluding under *Daubert* expert analysis that was "premised on a number of crucial factual assumptions that [were] dramatically belied by the record").

Mr. Anderson simply ignores evidence that factors other than the Challenged Claims cause consumers to buy a car from a particular dealership. This notwithstanding that nearly every Plaintiff admitted at deposition that there are numerous such causal factors, including pricing, inventory, location, reputation, recommendations of friends or family and on-line reviews. *See, e.g.*, *Salon Fad v. L'Oreal USA, Inc.*, No. 10 Civ. 5063 (DLC), 2011 WL 4089902, at *8 (S.D.N.Y. Sept. 14, 2011) (excluding under *Daubert* expert evidence that did not "distinguish between lost sales due to a reputational harm from the false advertising, and lost sales due to other factors unrelated to the false advertising"). And while Mr. Anderson acknowledged that data exists allowing him to compare the sales of TrueCar-affiliated dealers before, during, and after TrueCar ran the No Haggle Claim, he conducted no such analysis. While it is Plaintiffs' burden to prove causation — and not TrueCar's burden to disprove it — TrueCar's expert, Dr. Keith Ugone, *did* undertake such an analysis, and it shows "no discernible, systematic, and/or persistent change in . . . TrueCar-related car sales of the magnitude posited by Mr. Anderson when the No Haggle Claim was introduced or removed," particularly "once seasonality is accounted for in the data." Indeed, Dr. Ugone found that "the changes in monthly sales *during* the period when the No Haggle Claim was in use are uncorrelated with the observed changes at the implementation and the removal of the claim."

Further, as each Plaintiff claims individualized damages, Mr. Anderson's proposal to use an "average" profit calculation — without even considering each individual Plaintiff-dealer's finances or competitive advantages and disadvantages vis-à-vis other dealers — is entirely inappropriate.[5] This is not a class action. Having elected not to proceed by class

---

[5]    We anticipate that Plaintiffs will argue that Mr. Anderson's ratio of $1,602 of average lost profit per every lost same-make automobile sale in a given zip code is conservative — in that, for example, it omits other-make sales or sales made outside the search zip code — and thus compensates for these other unaccounted-for causal factors. But that an equally speculative higher profit margin per same-make car sale could have been used does not cure the problem that Mr. Anderson completely ignored causation in his analysis. *See Reed Const. Data Inc. v. McGraw-Hill Cos.*, 49 F. Supp. 3d 385, 402 (S.D.N.Y. 2014) (expert's counterargument that, if anything, his model would "*underestimate* damages" was "not responsive to [defendant's] concerns"; failure to address "another unobserved variable" was "significant" flaw which "coupled with other flaws in . . . methodology" rendered model "inadmissible under *Daubert*"); *Concordia Pharm., Inc. v. Method Pharm., LLC*, No. 14 CV 0016, 2016 WL 1464639, at *6 (W.D. Va. Apr. 13, 2016) (failure to "take into account numerous market factors that could have affected [product sales], and was based on selectively chosen data and unsupported

The Honorable P. Kevin Castel
November 22, 2017

litigation, Plaintiffs apparently believe they can nevertheless establish a *prima facie* case with the "average net profit per new car sold within a large number of vehicles," allowing them to reap the benefits of representative litigation without satisfying the "rigorous analysis" required for class certification, *Comcast Co. v. Behrend*, 569 U.S. 27, 33 (2013), including a showing that what is "average" nationwide is "typical" of Plaintiffs here. *See* Fed. R. Civ. P. 23(a)(3) (requiring that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class"). But of course a class could never be certified here, given that Plaintiffs vary along every conceivable point of comparison. Plaintiffs are scattered throughout the country, and sell different cars to different consumers in different markets at different prices. A number of Plaintiffs are former TrueCar dealers. Some have never had any relationship with TrueCar. Some sell Porsches. Others sell Fiats. Against this backdrop, such a speculative measure of damages is entirely inappropriate. *See Merck Eprova*, 760 F.3d at 259.

    Finally, Plaintiffs cannot end-run the required showing of injury and causation with a string of presumptions. A presumption of injury arises only where there has been a showing of "egregious" deliberate deception in the context of a two-player market or between direct competitors. *Id.* at 259–61.[6] That is not the case here. Even if evidence of "egregious" deliberate deception exists (and TrueCar disputes that it does), Plaintiffs cannot avail themselves of this presumption both because TrueCar does not compete directly with Plaintiffs — indeed, TrueCar is not in the business of selling cars — and because this is not a two-player market. Apart from the myriad brick and mortar dealers in the market, TrueCar is not even the only

---

  assumptions" rendered expert opinion inadmissible under *Daubert*); *Nikkal Indus. v. Salton, Inc.*, 735 F. Supp. 1227, 1233 (S.D.N.Y. 1990) (excluding under *Daubert* expert opinion that failed to "provide for the impact of other significant factors" which could have affected plaintiff's profits, "such as the possible effects on sales of a declining trend in the popularity of [plaintiff's product], the appearance of several competitors, vigorous price competition and, most importantly, [plaintiff's] poor marketing strategy").

[6] In cases involving literal falsity "extrinsic evidence of injury to consumers or to the plaintiff" may not be required, *Merck Eprova*, 760 F.3d at 259, but Plaintiffs may not avail themselves of this principle here. Plaintiffs allege that the No Haggle Claim is literally false by necessary implication (FAC ¶ 189). A message can be literally false on this theory only if it is unambiguous. *See Time Warner Cable, Inc.*, 497 F.3d at 158; *see also Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 290 F.3d 578, 587 (3d Cir. 2002) (for advertising message to be "false by necessary implication," falsity must be embedded within message itself, recognized "as readily as if it had been explicitly stated" (citation omitted)). A survey conducted by Plaintiffs' expert, Philip Johnson, shows that only a fraction of consumers believed that the No Haggle Claim communicated a message that there will be no negotiating or haggling over price when they use the TrueCar service at a TrueCar-affiliated dealer. Given that this message is not received by all consumers, by definition it is not embedded within the claim itself and not an unambiguous takeaway, and thus cannot be literally false.

The Honorable P. Kevin Castel
November 22, 2017

existing electronic platform for being introduced to a dealer to explore the purchase of a car. Most of the Plaintiffs admitted they do business with and obtain prospective customers through various other electronic car-marketing platforms such as Edmunds, cars.com, and Autotrader.

In short, Plaintiffs cannot establish their *prima facie* case without injury and causation, and because they have demonstrated they are completely incapable of proving these elements, TrueCar respectfully submits that the Anderson Report should be excluded under *Daubert* and that summary judgment should be entered in favor of TrueCar.

<u>Plaintiffs Cannot Establish Damages</u>

Even if Plaintiffs were somehow able to avoid summary judgment, they would nevertheless be unable to establish damages. "[A] plaintiff who establishes false advertising in violation of 43(a) of the Lanham Act will be entitled only to such damages as were caused by the violation." *Burndy Corp. v. Teledyne Indus., Inc.*, 748 F.2d 767, 771 (2d Cir. 1984); *Hot Wax, Inc. v. S/S Car* Care, No. 97 C 6879, 1999 WL 966094, at *1 (N.D. Ill. Oct. 14, 1999) ("In considering the evidence, the court must ensure that the record adequately supports all items of damages claimed and establishes a causal link between the damages and the defendant's conduct."). Thus, the Anderson Report's causation shortcomings undermine Plaintiffs' ability to calculate their alleged lost profits. *See, e.g.*, *Koon Chun Hing Kee Soy & Sauce Factory v. Star Mark Mgmt., Inc.*, No. 04 CV 2293 (SMG), 2009 WL 5185808, at *4 (E.D.N.Y. Dec. 23, 2009) (declining to award plaintiff lost profits based on its lost sales where plaintiff assumed it would have made 100% of the sales made by counterfeit product). And while a plaintiff seeking relief under the Lanham Act is not required to prove the amount of damages with exacting specificity, it must nevertheless show, among other things, that the methodology used to calculate damages caused by the alleged false advertising is reliable. *Id.* Courts in this district routinely reject damages analyses like Mr. Anderson's that simply layer assumption on top of assumption to arrive at a theory of causation. *See, e.g.*, *Faulkner v. Nat'l Geographic Soc'y*, 576 F. Supp. 2d 609, 619 (S.D.N.Y. 2008) (When expert's analysis "starts with an unsubstantiated assumption . . . and proceeds by nothing more than guesses . . . each baseless step based on the preceding guess," it causes "[the expert's] opinion [to be] grounded only in assumptions, not in facts. The methodology is anything but reliable. It is not admissible.").

Unsurprisingly, courts have excluded expert opinions in Lanham Act cases such as this one precisely because they improperly assumed that all of the plaintiff's lost sales were caused by the defendant's advertising, rendering the opinions unreliable and inadmissible. In *American Home Products Corp. v. Johnson & Johnson*, 682 F. Supp. 769, 771 (S.D.N.Y. 1988), the court rejected "the assumption that the entire difference between the number of anticipated physician recommendations and the number of actual physician recommendations is attributable to false or misleading advertising." The court held that such a conclusion was "highly questionable" because it "ignores the multitude of other factors which might have influenced physicians." *Id.*; *see also Pharmanetics, Inc. v. Aventis Pharm., Inc.*, No. 5:03-CV-817-FL(2), 2005 WL 6000369, at *11 (E.D.N.C. May 4, 2005) (holding that "because [the expert's]

The Honorable P. Kevin Castel
November 22, 2017

damages model assumes that all lost sales were caused by defendant's conduct, [the] model is unreliable and misleading"), *aff'd*, 182 F. App'x 267 (4th Cir. 2006).  So too here.  As Dr. Ugone points out, Mr. Anderson's assumption that all lost sales were caused by the Challenged Claims overlooks, among other things, that (i) "no discernible, systematic, and/or persistent change follow[ed] the introduction [or] removal of the No Haggle Claim" from TrueCar's advertising, and (ii) numerous features of the TrueCar user experience — many of which formed the basis for the now dismissed claims — contribute to new-car sales, as Plaintiffs themselves allege in the Amended Complaint.  And there is simply no basis for Mr. Anderson's assumption that *all* of these sales would have gone to Plaintiffs, rather than other local competitors, particularly in light of his admission that "[i]t would not be accurate to assume" any dealer has 100% market share within its primary market area.

The disgorgement analysis proffered by Mr. Anderson as an alternative to recovery of Plaintiffs' lost profits fares no better.  Under Section 35(a) of the Lanham Act, "[i]n assessing profits [to be disgorged] the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed."  But Plaintiffs knew full well that after accounting for its operating expenses, TrueCar's profits associated with all of its new car sales were negative and so there are no profits to disgorge.  In light of this, Plaintiffs attempted to prove only those TrueCar sales supposedly made at the expense of Plaintiffs.  But this disgorgement analysis is based on the same unfounded assumptions as Mr. Anderson's lost profits analysis described above and should be rejected on the same basis.  *See Salon Fad*, 2011 WL 4089902, at *11 (requiring plaintiffs to demonstrate "link between the defendants' profits from diversion and the injury" to invoke remedy of disgorgement).

Plaintiffs also seek a windfall in the form of alternative prospective corrective advertising damages based upon the Federal Trade Commission's 25% Rule, which imposes an "arbitrary" fine of 25% of certain of its advertising expenditures.  "In contrast to a claim for damages that seeks reimbursement for a plaintiff's past expenditures in conducting such advertising that was concurrent with the wrong, an award for corrective advertising to be run in the future has been described as 'an extraordinary remedy reserved for cases in which a plaintiff lack[ed] financial ability to pay for reparative ads.'"  *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, No. 04 Civ. 7203 (DLC), 2006 WL 1359955, at *1 (S.D.N.Y. May 18, 2006) (citation omitted).  So extraordinary is this form of relief that, to our knowledge, it has never once been awarded in this Circuit.  Even if such damages were available, however, they are awarded only where the plaintiff and defendant are direct competitors, which Plaintiffs and TrueCar are not.  *See id.* at *3.  When the products do not compete, "an award of prospective corrective advertising is not sufficiently tied to compensation for past infringement to be a reliable measure of damages" and "would be nothing more than a windfall."  *Id.*  Even when the products do compete, the plaintiff "must show that it was financially incapable of undertaking effective concurrent corrective advertising measures to counteract the false ads," *Playtex Prods., Inc. v. Procter & Gamble Co.*, No. 02 Civ. 8046 (WHP), 2003 WL 21242769, at *8 (S.D.N.Y. May 28, 2003), *aff'd*, 126 F. App'x 32 (2d Cir. 2005), a showing Plaintiffs do not even attempt to make here.

The Honorable P. Kevin Castel
November 22, 2017

* * *

We respectfully request permission to make *Daubert* and summary judgment motions on the following briefing schedule:

- TrueCar's moving brief — January 19, 2018[*]

    [*] We respectfully request this date in light of a trial before Judge Nathan that my partner, Norman C. Simon and I have the week of December 11 (with post-trial briefing expected), as well as travel commitments for the holidays.

- Plaintiffs' opposition brief — February 23, 2018

- TrueCar's reply brief — March 16, 2018


Respectfully submitted,

*[signature]*

Harold P. Weinberger