UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DEPENDABLE SALES & SERVICE, INC., et
al.,

                            Plaintiffs,                     15-cv-1742 (PKC)

          -against-                          OPINION AND ORDER ON
                                            MOTION TO RECONSIDER

TRUECAR, INC.,

                            Defendant.
-------------------------------------------------------------x

CASTEL, U.S.D.J.

                        Defendant TrueCar, Inc. ("TrueCar") has moved for partial reconsideration of the

Court's summary judgment decision pursuant to Local Civil Rule 6.3.  The central holding was

that the plaintiffs, 108 automobile dealerships suing individually under section 43(a) of the

Lanham Act, 15 U.S.C. § 1125(a), had failed to come forward with evidence of economic or

reputational injury.  Dependable Sales & Serv., Inc. v. TrueCar, Inc., 2019 WL 1407440, at *8-

12 (S.D.N.Y. Mar. 27, 2019).  Because the plaintiff dealerships were not direct competitors of

TrueCar, and TrueCar's false advertisements did not make comparative claims, plaintiffs were

not entitled to a presumption of injury.  Id. at *5-7.  However, the Court further ruled that

evidence of injury was not required in order to proceed with a claim for the disgorgement of

profits from a defendant shown to have willfully violated the Lanham Act.  Id. at *12-14.

Whether and under what circumstances a showing of injury is a required element of a claim for

disgorgement under the Lanham Act had not been a central focus of the parties' summary

judgment briefs.

Having reexamined the Second Circuit's authority on the Lanham Act's disgorgement remedy and the Supreme Court's decision in Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118 (2014), the Court concludes that plaintiffs' failure to come forward with evidence of injury precludes their disgorgement claim, despite evidence of TrueCar's willful Lanham Act violations.  TrueCar's motion for reconsideration is therefore granted.

The remedies for a false-advertising claim are set forth in section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), which states in part that "[w]hen . . . a violation under section 1125(a) or (d) of this title . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits . . . ."  To make out a claim of false advertising, section 43(a) states that "[a]ny person who, on or in connection with any goods or services . . . uses . . . any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."  15 U.S.C. § 1125(a)(1)(B).

Although the statute speaks of "any person" who "believes" he or she was "likely" damaged by false advertisements, the Lanham Act provides a viable claim only to plaintiffs who suffer an actual commercial injury proximately caused by a false advertisement. "Read literally, [the statute's] broad language might suggest that an action is available to anyone who can satisfy the minimum requirements of Article III."  Lexmark, 572 U.S. at 129.  But Lexmark concluded that the statute "'should not get such an expansive reading.'"  Id. (quoting

Holmes v. Sec. Inv. Protection Corp., 503 U.S. 258, 266 (1992)).  To have an actionable claim

under the Lanham Act, a plaintiff must both fall within the "zone of interests" covered by the

Lanham Act and show an injury "flowing directly from the deception wrought by the defendant's

advertising . . . ."  Lexmark, 572 U.S. at 129-34.[1]  The "zone of interest" in a false advertising

case includes "a commercial interest in reputation or sales."  Id. at 131-32.

    As the Court discussed in the summary judgment decision, there is authority in

this Circuit that section 35(a) allows, under certain circumstances, for the disgorgement of a

defendant's profits to advance the interest of deterrence, even where the plaintiff has not

demonstrated injury.  See Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,

146 F.3d 66, 72 (2d Cir. 1998) ("We have held that an accounting for profits is available, even if

a plaintiff cannot show actual injury or consumer confusion, 'if the accounting is necessary to

deter a willful infringer from doing so again.'") (quoting George Basch & Co. v. Blue Coral,

Inc., 968 F.2d 1532, 1537 (2d Cir. 1992)); Burndy Corp. v. Teledyne Industries, Inc., 748 F.2d

767, 772 (2d Cir. 1984); W.E. Bassett Co. v. Revlon, Inc., 435 F.2d 656, 664 (2d Cir. 1970).

TrueCar notes that the line of cases arose in the trademark and trade dress arena.

    More recently, in a false-advertising case, the Second Circuit observed that "[o]ur

precedent permits a district court to award a defendant's full profits based solely on deterrence."

Merck Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 262 (2d Cir. 2014).  However, in Merck, the

Second Circuit approved the application of a presumption of injury where the plaintiff and

defendant were "obviously in direct competition."  Id. at 260.  Then-District Judge Sullivan

"found injury" to the plaintiff with regard to various materials published by the defendant.  Id. at

---

[1] Lexmark expressed disapproval of the term "statutory standing," noting that whether a particular plaintiff may proceed under a statute does not implicate the subject-matter jurisdiction concerns of Article III standing.  Id. at 128 n.4.  Lexmark instructs that instead of referring to statutory "standing," the issue is more properly framed as whether a plaintiff "falls within the class of plaintiffs" given a cause of action by the underlying statute.  Id. at 128.

254.  Relying on trademark precedent, <u>Merck</u> affirmed the disgorgement remedy, noting that disgorgement would be appropriate on any of the three grounds set by section 35(a): unjust enrichment, compensation or deterrence.  <u>Id.</u> at 262.

The Second Circuit has not addressed the availability of the disgorgement remedy where a false-advertising plaintiff has failed to demonstrate injury and is unable to rely on a presumption of injury because the parties are not in direct competition.  This Court now concludes that a false advertising plaintiff must demonstrate injury either by proof of injury or a presumption of injury in order to proceed with a disgorgement claim.

There are important differences in the elements of a trademark claim and a false advertising claim, as well as in the interests at stake.  The Lanham Act protects a trademark "against infringement by use of colorable imitations of the mark which are 'likely to cause confusion, or to cause mistake, or to deceive.'"  <u>Hormel Foods Corp. v. Jim Henson Prods., Inc.</u>, 73 F.3d 497, 502 (2d Cir. 1996) (quoting 15 U.S.C. § 1114(1)).  "[T]he plaintiff must prove (1) that the mark is distinctive as to the source of the good, and (2) that there is a likelihood of confusion between its good and the defendant's."  <u>Yurman Design, Inc. v. PAJ, Inc.</u>, 262 F.3d 101, 115 (2d Cir. 2001).

In a trademark case, a plaintiff may be harmed by virtue of losing exclusive control over its own mark.  "The trademark laws are designed not only to prevent consumer confusion but also to protect the synonymous right of a trademark owner to control his product's reputation."  <u>Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.</u>, 604 F.2d 200, 205 (2d Cir. 1979) (quotation marks omitted).  The unauthorized use of a mark "invariably threatens injury to the economic value of the goodwill and reputation" associated with the mark.  <u>Church of Scientology Int'l v. Elmira Mission of the Church of Scientology</u>, 794 F.2d 38, 43 (2d Cir.

1986).  A plaintiff is harmed where it "will lose control over the reputation of its trademark . . . .
Reputation is not calculable nor precisely compensable . . . and may very well diminish as a
result of confusion . . . ."  Power Test Petroleum Distributors, Inc. v. Calcu Gas, Inc., 754 F.2d
91, 95 (2d Cir. 1985).  Even where a trademark plaintiff cannot point to lost sales, it may still be
harmed by "a loss of control . . . over how the public perceives" its goods or services.  The
Sports Authority, Inc. v. Prime Hosp. Corp., 89 F.3d 955, 964 (2d Cir. 1996).

Thus, in W.E. Basset Co., the Second Circuit concluded that the district court
should have ordered disgorgement solely to deter willful infringement because the "deliberate[]
and fraudulent[]" infringement of plaintiff's mark warranted disgorgement of defendant's full
profits, even though plaintiff did not demonstrate lost sales, consumer confusion or damage to
good will.  435 F.2d at 664.  Defendant's "callous disregard for the rights of a competitor" was
sufficient.  Id.

By contrast, a plaintiff in a false-advertising case must demonstrate injury by way
of lost sales or damage to business reputation.  "To prevail on a Lanham Act false advertising
claim, a plaintiff must establish that the challenged message is (1) either literally or impliedly
false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury
to the plaintiff."  Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH, 843 F.3d
48, 65 (2d Cir. 2016).  As the Court discussed in its summary judgment decision, a presumption
of injury may arise when an advertisement makes false claims about a direct competitor, but
where, as here, a misleading advertisement does not make comparative claims about a direct
competitor, a plaintiff must demonstrate actual injury and causation.  Dependable Sales &
Service, Inc., 2019 WL 1407440, at *5-6 (collecting cases).

In Lexmark, the Supreme Court explained that commercial injury caused by the advertisement is necessary for a false-advertising plaintiff to fall within the category of persons who may proceed under the Lanham Act.  In general, "a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute," and "the proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct."  572 U.S. at 132, 133.  A plaintiff who brings a false-advertising claim under the Lanham Act "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff."  Id. at 133.  Lost sales and damage to business reputation "are injuries to precisely the sorts of commercial interests the [Lanham] Act protects."  Id. at 137.

Lexmark arose at the pleading stage.  The defendant urged that the plaintiff could not seek relief under the Lanham Act because the parties were not direct competitors, and any claims should be brought by "more direct plaintiffs."  Id. at 123-24.  The Supreme Court rejected such a limitation and concluded that a party not directly in competition with a defendant could have an actionable claim, provided that it plausibly alleged "injuries to business reputation and present and future sales."  Id. at 131.  Such injury "ordinarily must . . . flow[] directly from the deception wrought by the defendant's false advertising . . . ."  Id. at 133; see also Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 162 (2d Cir. 2007) (in false-advertising cases, "'some indication of actual injury and causation' is necessary 'to satisfy Lanham Act standing requirements and to ensure [the] plaintiff's injury [is] not speculative.'") (quoting McNeilab, Inc. v. American Home Products Corp., 848 F.2d 34 (2d Cir. 1988)); Ortho Pharma. Corp. v. Cosprophar, Inc., 32 F.3d 690, 694-97 (2d Cir. 1994) (affirming district court's finding that

plaintiff lacked Lanham Act "standing" after a bench trial in which plaintiff failed to prove that defendant's advertisements caused injury).

       Lexmark did not discuss the use of disgorgement to advance deterrence, but it did reference it as a potential compensatory remedy if an injured plaintiff "cannot quantify its losses with sufficient certainty to recover damages . . . ." 572 U.S. at 136. It observed that in such a situation, a plaintiff "may still be entitled to . . . disgorgement of the defendant's ill-gotten profits under § 1117(a)." Id.

       Having reexamined the Second Circuit's discussions of the disgorgement remedy in light of Lexmark, the Court concludes that reconsideration of its summary judgment decision is warranted. Lexmark requires a false-advertising plaintiff to demonstrate an injury proximately caused by the defendant, most typically through lost sales or harm to business reputation. Because no comparative claims were made by a direct competitor, no presumption of injury applies. As discussed in the Court's summary judgment decision, plaintiffs have failed to come forward with evidence that, if believed, demonstrates actual injury caused by TrueCar's advertisements. 2019 WL 1407440, at *5-11.

       Without enforcement of the injury requirement, plaintiffs who are not competitors and who have not been injured could bring a false-advertising solely seeking to disgorge the wrongdoer's profits. This would expand the category of eligible plaintiffs beyond those in the zone of interest described by Lexmark. 572 U.S. at 131-32 (a plaintiff must allege "an injury to a commercial interest in reputation or sales" in order "to come within the zone of interests in a suit for false advertising under § 1125(a) . . . ."); see also McNeilab, 848 F.2d at 38 (requiring "some indication of actual injury and causation to satisfy Lanham Act standing requirements and to ensure a plaintiff's injury was not speculative.").

It may seem anomalous that a false advertiser in need of deterrence can escape the disgorgement of profits when there are plaintiffs that are eager and willing to pursue that remedy. But the 108 plaintiffs here have not come forward with evidence of injury. A differently-situated plaintiff may have been able to prove injury, and such a plaintiff might have damages that are small or difficult to establish, for which disgorgement is an ideal remedy. Also, there are other means to deter false advertisers. Injured consumers may have state-law remedies that they could pursue on a class-wide basis. Further, the Federal Trade Commission, state attorneys general, and a raft of state and local consumer-protection agencies have the authority to pursue, punish and deter false advertisers. See, e.g., F.T.C. v. Bronson Partners, LLC, 654 F.3d 359 (2d Cir. 2011) (affirming an award of "equitable disgorgement" in an agency enforcement action against advertiser making a false weight-loss claim); People by Schneiderman v. Charter Commc'ns, Inc., 162 A.D.3d 553, 553 (1st Dep't 2018) (civil enforcement action by state attorney general against alleged false advertiser of internet speeds and reliable access).

This Court now concludes that a false-advertising plaintiff who does not come forward with evidence of an injury proximately caused by defendant's advertisements does not have a statutory interest in deterring willful violations of the Lanham Act. TrueCar's motion for reconsideration is therefore granted, and summary judgment is granted in its favor as to the entirety of the Lanham Act claim.

The Complaint separately brings claims under New York common law and its General Business Law, as well as "other comparable state laws." The Complaint invokes federal question jurisdiction and the Court's supplemental jurisdiction, and does not invoke diversity jurisdiction. By the Court's count, the 108 plaintiff dealerships are located in 23 different states.

The parties' summary judgment briefs did not address plaintiffs' state law claims and did not discuss whether the Court should exercise supplemental jurisdiction over them.  In the present motion, TrueCar urges that the Court should decline to exercise supplemental jurisdiction in the event that the remainder of the Lanham Act claim is dismissed.  (Def. Mem. at 7 n.4.)  Plaintiffs' response does not address the issue of supplemental jurisdiction.  Both sides have had an opportunity to be heard, and neither has urged that economy, convenience, fairness or comity weigh in favor of exercising supplemental jurisdiction.  Catzin v. Thank You & Good Luck Corp., 899 F.3d 77, 82-83 (2d Cir. 2018).

A district court may decline to exercise supplemental jurisdiction if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  A district court has discretion as to whether it should exercise supplemental jurisdiction over state law claims when all federal claims have been dismissed.  Catzin, 899 F.3d at 83.  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims."  Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003) (quoting Carnegie-Mellon University v. Cohill, 484 U.S. 343, 349-50 (1988)).

Here, the Court has dismissed plaintiffs' sole federal claim.  The remaining state-law claims would look to the laws of 23 states as respectively applied to 108 plaintiffs.  Because the remaining claims are brought under the laws of multiple jurisdictions and turn on state-specific requirements, principles of judicial economy, fairness, convenience and comity will be served best by declining to exercise supplemental jurisdiction over the remaining state law claims and, accordingly, all such claims are dismissed.

CONCLUSION.

TrueCar's motion for reconsideration is GRANTED.  The Court declines to exercise supplemental jurisdiction over the plaintiffs' remaining state-law claims.

The Clerk is directed to enter Final Judgment in favor of TrueCar as to Count One of the Amended Complaint and dismiss the remaining claims without prejudice.  The Clerk is further directed to close the case and terminate the motion.  (Docket # 126.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       July 12, 2019

- 10 -